IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA

        Plaintiff,

VS.                                  Criminal No. 25-cr-20032-JTF

SANJEEV KUMAR,

        Defendant.

---

### UNITED STATES' RULE 16 EXPERT WITNESS DISCLOSURE

---

The United States gives notice, pursuant to Federal Rules of Criminal Procedure 16(a)(1)(G) of its intent to introduce the testimony of Matt McDonald, MD as an expert who will give opinions on matters in the case.

Dr. Matt McDonald is Gynecologic Oncologist employed by the Novant Health Cancer Institute in Charlotte, North Carolina since 2008. Dr. Matt McDonald's qualifications and publications authored in the previous ten years are included in his curriculum vitae, which has been provided to defense in discovery.

Dr. Matt McDonald will be called to testify regarding his medical specialty, Gynecologic Oncology, with a focus on hysteroscopy with endometrial sampling. He has previously testified in as an expert witness in the field of Gynecologic Oncology on the following occasions: deposed in Sudell v. Labcorp, September 6, 2023.

In this case, Dr. Matt McDonald will testify to the contents of his report dated October 30, 2024, including the following:

1. Hysteroscopy with endometrial sampling is a crucial gynecological procedure used

both diagnostically and therapeutically. This technique allows direct visualization of the uterine cavity, facilitating the diagnosis and treatment of various intrauterine conditions. As such, it plays a significant role in contemporary gynecological practice.

2. The indications for hysteroscopy are diverse and may be broadly categorized into diagnostic and therapeutic purposes. The diagnostic and therapeutic indications and procedure are outlined in my report dated October 30, 2024.

3. Potential complications of hysteroscopy with endometrial sampling include infection, uterine perforation, bleeding, and adhesions.

4. The frequency for repeat hysteroscopy depends on the underlying condition and its recurrence. For diagnostic purposes, it may be repeated if new symptoms arise or if there are concerns about incomplete evaluation. One may reliably rule out endometrial hyperplasia vs. carcinoma for six to twelve months following hysteroscopic evaluation. Endometrial sampling, with or without hysteroscopy, for diagnostic purposes at more frequent interval is not necessary.

5. My opinions on medical necessity below, unless otherwise noted, were based on the review of the medical records provided to me by Special Agent Reagan Fajkus for my medical review.

6. Over 11,000 pages of medical records were reviewed. Of the 23 individual patient records reviewed, at least one medically unnecessary hysteroscopy was performed on each patient. It was my opinion based solely on the record review, that at least 100 of the 151 hysteroscopies were not indicated. I questioned the appropriateness of additional hysteroscopies, but definitively determined that at least 100 were not medically indicated or necessary.

7. Victim-1: the hysteroscopies performed on January 30, 2023, February 13, 2023, and March 7, 2023 were not medically necessary given her normal sampling on January 2, 2023.

   If Victim-1 never reported that she was post-menopausal, and instead reported still having regular menstrual cycles, then my opinion would not change as to the medical necessity of the hysteroscopies because statistically she would be menopausal based on her age and I would treat her as such.

8. Victim-2: the hysteroscopies performed on August 8, 2020, February 4, 2021, February 25, 2021, April 9, 2021, and May 11, 2021 were not medically necessary.

9. Victim-3: the hysteroscopies performed on January 5, 2021, April 8, 2021, October 26, 2021, and November 10, 2020[1] were not medically necessary given normal endometrial sampling at intervals less than 12 months before.

   If Victim-3 reported that she was post-menopausal, but did not report bleeding as noted in her record, then my opinion would change as to the medical necessity of the hysteroscopies as follows: there would not be a medical necessity for any of her hysteroscopies. The only indication for a hysteroscopy without postmenopausal bleeding in this patient would be if there was an ultrasound with endometrial stripe of greater than or equal to 1 cm.

10. Victim-4: the hysteroscopies performed on May 5, 2022, May 19, 2022, November 17, 2022[2] were not medically necessary given normal endometrial sampling on April 11,

---

[1] My Report dated October 30, 2024 states November 15, 2022. It is unclear from the medical records whether the hysteroscopy was performed on November 10, 2022 or November 15, 2022. Whether the hysteroscopy was performed on November 10, 2022 or November 15, 2022 does not change my medical assessment.
[2] It is unclear from the medical records whether the patient received a hysteroscopy or just an

3

2022. The hysteroscopy performed on February 6, 2024 was not medically necessary given normal sampling on December 18, 2023. The hysteroscopy performed on June 17, 2024 was not medically necessary given normal sampling on December 18, 2023 and February 6, 2024.

If Victim-4 reported pain in her abdomen and cysts on her ovaries, but did not report abnormal bleeding as noted in her record, then my opinion would change as to the medical necessity of the hysteroscopies as follows: there would not be a medical necessity as to any hysteroscopies performed.

11. Victim-5: the hysteroscopy performed on August 26, 2021 was not medically necessary given the patient's age of 14.

12. Victim-6: the hysteroscopies performed on April 19, 2021, July 19, 2021 and December 7, 2021 were not medically necessary because there were two hysteroscopies with endometrial sampling performed with no endometrial tissue on February 22 and March 8, 2021. Any additional unsatisfactory pathology is unacceptable.

13. Victim-7: the hysteroscopies with endometrial sampling performed on February 3, 2022, July 29, 2022, September 7, 2022, November 5, 2022 and January 18, 2023 were not medically necessary given her age.

14. Victim-8: the hysteroscopies performed on May 21, 2022, June 25, 2022, September 24, 2022, October 11, 2022, December 10, 2022, February 10, 2023, March 10, 2023, April 10, 2023, November 6, 2023, December 4, 2023 were not medically necessary because there was normal sampling on April 22, 2022 and April 10, 2023.

If Victim-8 never reported that she was post-menopausal, and instead reported still

---

endometrial biopsy on November 17, 2022. Neither procedure is medically indicated.

having regular menstrual cycles, then my opinion would not change as to the medical necessity of the hysteroscopies because statistically she would be menopausal based on her age and I would treat her as such.

15. Victim-9: none of the hysteroscopies performed on this patient were medically necessary. The hysteroscopy performed on June 9, 2020 was not indicated because she was referred for an abnormal PAP result. The hysteroscopies performed on October 29, 2020, March 20, 2021, April 15, 2021, and April 30, 2021 were not medically necessary given her normal sampling on June 9, 2020.

16. Victim-10: the hysteroscopies performed on October 16, 2021, April 30, 2022, September 19, 2022, March 4, 2023, and May 6, 2023 were not medically necessary because there were two hysteroscopies with endometrial sampling performed with no endometrial tissue on September 11, 2021 and October 2, 2021. Any additional unsatisfactory pathology is unacceptable.

17. It is my opinion that the instruments or devices used for hysteroscopies must be sterile prior to the procedure because the devices come in contact with the vaginal canal, cervix, and uterus and if they are not sterile the risk of infection to the patient increases. If Poplar Avenue Clinic was re-using single use devices and/or not properly sterilizing ones that could be re-used, it is my opinion that those devices may be injurious to the health of the patient.

18. In my opinion, situations where a provider is relying on a human scribe to document the visit in the patient's medical record, that individual needs to be in the room, whether personally or via audio, to be able to appropriately and accurately document. Once the scribe documents the visit, it is the provider's responsibility to review the medical

record to verify the accuracy as to the patient's care in order to bill properly for the visit, provide appropriate medical care for the patient, and accurately depict a patient's medical history.

19. Obesity is the leading risk factor for abnormal endometrial pathology, including endometrial hyperplasia and/or endometrial cancer. Because of this, it is my opinion that obesity lowers the threshold for performing endometrial sampling, but not hysteroscopy, in obese woman complaining of abnormal bleeding. Hysteroscopy is not a necessary component of endometrial sampling.

20. When you do a hysteroscopy, you push saltwater into the uterine cavity to visualize it. This increases the pressure within the uterus. If a patient has uterine cancer, the cancerous cells can be pushed into the abdomen through the fallopian tubes during the hysteroscopy. There are studies showing that when hysteroscopy is used, there is an increased rate of endometrial cancer cells being detected in the pelvis at the time of hysterectomy for women with endometrial cancer. In instances where office-based endometrial sampling is indicated, endometrial biopsy is equivalent to endometrial biopsy with hysteroscopy. Including hysteroscopy adds risk, time, cost, instrumentation, and pain to the patient, and there is no clear diagnostic benefit.

21. Based on my review of the medical records provided, it is my opinion that this provider was either motivated by the compensation provided by procedural based encounters or was inappropriately treating patients by failing to reference a patient's medical record in medical decision-making.

I, _____, have reviewed the foregoing disclosure regarding my opinions, qualifications, and prior testimony, and it is true and accurate.

The United States requests disclosure under Fed. R. Crim. P. 16(b)(1)(C) of any potential defense witnesses who would give opinions as evidence at trial under Rules 702, 703, or 705 of the Federal Rules of Evidence.

Respectfully submitted,

Joseph C. Murphy, Jr.
Interim United States Attorney
Western District of Tennessee

By:   /s/ Lynn Crum
LYNN CRUM
Assistant United States Attorney
167 N. Main St., Suite 800
Memphis, TN 38103
Telephone: (901) 544-4231

## CERTIFICATE OF SERVICE

I, Lynn Crum, Assistant United States Attorney, do hereby certify that a copy of the foregoing pleading was forwarded by electronic means via the Court's electronic filing system to the attorneys for the defendant.

This 23rd day of June, 2025.

 /s/  Lynn Crum
Assistant United States Attorney