**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.** **Cr. No. 2:25cr20032-SHL**

**SANJEEV KUMAR,**

**Defendant.**

---

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE GOVERNMENT'S 404(b) EVIDENCE OF ALLEGED OTHER ACTS OF HEALTH CARE FRAUD AND FAILURE TO COLLECT COPAYMENTS AND INCORPORATED MEMORANDUM IN SUPPORT**

---

Defendant Dr. Sanjeev Kumar, by and through undersigned counsel and pursuant to Federal Rules of Evidence 401, 402, 403, and 404(b), respectfully moves this Court to exclude evidence of alleged[1] other acts of health care fraud and Dr. Kumar and Poplar Avenue Clinic's alleged failure to collect co-payments ("co-pays") from patients in an attempt to induce patients to undergo unnecessary medical procedures. The Government claims that this evidence is intrinsic to the conduct charged in Counts 37–46 of the Second Superseding Indictment, which narrowly charge Dr. Kumar with committing health care fraud by billing government benefit health care programs for unnecessary medical procedures or those conducted with adulterated or misbranded devices. The Government's proffered evidence of other acts of health care fraud—billing for more procedures than is possible in one day,[2] Dr. Kumar and other providers at Poplar Avenue Clinic

---

[1] Dr. Kumar continues to deny all of the Government's allegations, including allegations of other instances of health care fraud.

[2] Undersigned counsel conferred with counsel for the Government one week ago, on October 27, 2025, about whether the Government would oppose this motion or whether it intended to no longer introduce any of its proffered alleged other acts of health care fraud. The Government stated it opposed the motion. This morning, the Government filed a supplemental Rule 404(b)

were "top billers", upcoding procedures for higher reimbursement, or unbundling procedures for additional reimbursement—is not intrinsic to Counts 37–46 but rather constitutes inadmissible "other acts" evidence under Federal Rule of Evidence 404(b). Further, the probative value of such evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and undue delay, and thus should be excluded under Rule 403, as should evidence of failing to collect co-pays. As explained more fully herein, evidence of other alleged acts of health care fraud that are not charged in the Second Superseding Indictment and failure to collect co-pays should thus be excluded from trial.

## BACKGROUND

Counts 37 through 46 of the Second Superseding Indictment charge Dr. Kumar with committing health care fraud, in violation of 18 U.S.C. §§ 1347 and 2. (Second Superseding Indictment, ECF No. 135, at 25–27.) A close read of the Second Superseding Indictment demonstrates that those charges are quite narrow. In Counts 37–45, the Government alleges that Dr. Kumar billed government health care benefit programs for unnecessary hysteroscopy with endometrial biopsy procedures for the nine patients listed therein. (*Id.* at 26–27.) Count 43 states also that Dr. Kumar submitted a second submission to Medicare for the procedure. (*Id.* at 26.) And Count 45 adds that Dr. Kumar billed Medicaid for a procedure that was not performed. (*Id.* at 27.) Though some of the counts include that Dr. Kumar made fraudulent representations of patient complaints to government health care benefit programs, that allegation ties directly to the Government's charges that Dr. Kumar performed unnecessary medical procedures. (*Id.* at 26–27.) Indeed, the Government revealed in Dr. Kumar's reverse proffer that it intends to offer proof that,

---

notice stating it no longer intended to introduce evidence of "impossible days of billing", thus rendering this single issue moot.

allegedly, patient medical records included complaints that could support performing hysteroscopies that were not true. The logic is that, if those complaints were not true, then the procedures were not necessary. In sum, Counts 37–45 all charge Dr. Kumar for billing government benefit programs for unnecessary medical procedures. (*See id.*)

Count 46 goes a short step farther to charge Dr. Kumar with committing health care fraud by performing those procedures with adulterated or misbranded devices. Notably, there are no allegations in Count 46—or anywhere else in the Second Superseding Indictment—that Dr. Kumar submitted "impossible days" of billing (billing for over 24 hours' worth of services in a 24-hour period), impermissibly upcoded procedures to result in a higher reimbursement, unbundled codes to receive higher reimbursement, or failed to collect co-pays from patients in an attempt to induce them to receive unnecessary medical care. To be clear, the Second Superseding Indictment only sets forth allegations that Dr. Kumar performed unnecessary medical procedures and/or used adulterated or misbranded devices in the process of performing those procedures and billed government health care benefit programs for those procedures. [3]

[3] On its face, Count 46 appears to be broad in scope, charging Dr. Kumar with "submit[ing] and caus[ing] to be submitted, and attempt[ing] to do so, claims for reimbursement for hysteroscopy services to health care benefit programs that were false and fraudulent, in that he falsely attested that he followed all pertinent rules and regulations in providing these services, including that the devices used during the procedures comported with all applicable regulations and were approved for use in patient care." (Second Superseding Indictment, ECF No. 135, at 27–28.) Given the count's broad scope, counsel for Dr. Kumar was concerned with the constitutionality of the count and conferred in good faith with counsel for the Government as to the basis for Count 46 (in the original indictment, Count 23) during the time period for filing dispositive motions. During Dr. Kumar's reverse proffer, the Government stated that the basis for this additional health care fraud count was that allegedly Dr. Kumar submitted false statements when billing that all devices were properly used, Dr. Kumar trained medical staff to perform hysteroscopies regardless of the patient's medical history, and that Dr. Kumar performed medically unnecessary procedures. Stated differently, Count 46 charges Dr. Kumar for billing for medically unnecessary procedures or those performed with adulterated and/or misbranded devices and thus is not broad in scope.

Yet, the Government's *Notice of Intent to Offer Evidence Under Federal Rule of Evidence 404(b)* (hereinafter "Notice"), states that it intends to offer "additional evidence of health care fraud" against Dr. Kumar. (ECF No. 98 at 7.) The Government intends to introduce "evidence of *hundreds* of 'impossible days' . . . peer comparisons which show Defendant and his providers to be top billers in the state and the nation, upcoding procedures when a lesser reimbursement procedure was actually performed, and unbundling, where Defendant would bill the health care benefit programs for multiple codes when there is one code available to reflect the totality of the interaction." (*Id.* at 7–8 (emphasis added).)[4] The Government claims that this evidence is intrinsic to the charges against Dr. Kumar because it shows his intent and motives. (*Id.* at 8.) Further, this evidence supposedly shows "how far of an outlier [Dr. Kumar] is from appropriate medical treatment", though all of these allegations relate to billing and billing practices, not the practice of medicine itself. (*Id.* 8.) The Government further alleges that such evidence is proper under Rules 403 and 404(b). (*Id.*) Overall, the Government's Notice is light on detail, fails to identify the codes that were upcoded or unbundled, and provides mostly conclusory allegations as to why evidence of other acts of health care fraud is admissible.

The same is true for evidence of failure to collect co-pays. The Notice states that the Government intends to offer "testimonial evidence from some patients that they were never asked for a copay for any of the procedures they received." (ECF No. 98 at 6.) The Government claims that this evidence is intrinsic to the charges against Dr. Kumar because it "explains how patients

[4] The Notice also states that the Government intends to introduce evidence of other unnecessary medical procedures or practices, including Uterine Fibroid Embolization procedures, mole removal on non-pelvic regions, and managing psychiatric medication. (Notice, ECF No. 98, at 4–5.) To the extent the Government will argue that these procedures form the basis for health care fraud under Count 46, this evidence should be excluded for all the same reasons as the Government's evidence of other acts of health care fraud. Further, the Government has not put Dr. Kumar on notice that those procedures and practices form the basis for Count 46.

were coerced into accepting unnecessary medical procedures performed by Defendant and his staff" and that "patients were led to believe the procedures were necessary and they were further coaxed into accepting the procedures because they were not made to pay a copay." (*Id.*) The Government further alleges that such evidence is being offered for a permissible purpose under Rule 404(b) to show motive, plan and preparation, lack of mistake, and intent to defraud. (*Id.*) Without any explanation, the Government also states that the evidence is "has high probative value, and it is not very prejudicial." (*Id.* (referring to balancing test under Fed. R. Evid. 403.))

**STANDARD**

"Evidence is relevant if . . . it has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." Fed. R. Evid. 401. To be relevant, evidence must, at least, be "a step on one evidentiary route to the ultimate fact" at issue. *Old Chief v. United States*, 519 U.S. 172, 179 (1997). "Rule 401 is not a standalone rule. Rule 402 says that the general admissibility of relevant evidence must yield to other Rules." *United States v. Hazelwood*, 979 F.3d 398, 409 (6th Cir. 2020).

Rule 404 prohibits the admission of "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence may be admissible only for non-propensity purposes—such as "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"—and only after the Government provides sufficient reasonable notice to the defendant. Fed. R. Evid. 404(b)(2), (3).

Even if admissible under Rule 404(b), evidence remains subject to Rule 403, which permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or

needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018). The Sixth Circuit has defined unfair prejudice as the "'undue tendency to suggest a decision based on improper considerations,' like the chance that the jury will convict the defendant because of his prior, instead of his charged, conduct." *Asher*, 910 F.3d at 861 (quoting *United States v. Bilderbeck*, 163 F.3d 971, 978 (6th Cir. 1999)). "One form of unfair prejudice involves the risk that the prior act could cause the jury to reach a verdict based on emotions instead of evidence." *Id.* at 861. "Another risk of unfair prejudice . . . involves the tendency of the evidence to lure the factfinder into an impermissible propensity line of reasoning—'generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged.'" *Id.* at 862 (quoting *Old Chief*, 519 U.S. at 180.) "Where . . . the probative value of the evidence is modest . . . , courts must be especially careful not to allow that evidence to reach the jury if the evidence is unduly prejudicial." *Id.* at 863.

## LAW AND ARGUMENT

### I. Evidence of other acts of healthcare fraud not charged in the Second Superseding Indictment should be excluded.

The Government's arguments in its Notice that these other acts of health care fraud, which have not been charged in the Second Superseding Indictment, constitute "res gestae" or "intrinsic" evidence,[5] or otherwise pass Rule 404(b)'s muster, plainly fail. The Second Superseding Indictment narrowly charges Dr. Kumar for billing for medically unnecessary procedures and/or procedures performed with adulterated or misbranded devices. Acts of billing for more procedures than possible in a day, being a "top biller", upcoding charges, or unbundling charges do not touch on medical necessity or the use of adulterated or misbranded devices and thus fail under the Sixth

[5] Courts refer to these terms interchangeably. *See, e.g.*, *United States v. Fibbs*, 797 F.3d 416, 423 (6th Cir. 2015).

Circuit's strict analysis of permissible *res gestae* evidence. Such evidence is further improper under Rule 404(b) and must be excluded.

**A. Evidence of other acts of health care fraud not charged in the Second Superseding Indictment is not *res gestae* to Counts 37–46.**

The concept of *res gestae* does not give the Government "unfettered rein" to introduce evidence of other acts of health care fraud at trial. *United States v. Brown*, 888 F.3d 829, 838 (6th Cir. 2018) (quoting *United States v. Hardy*, 228 F.3d 745, 749 (6th Cir. 2000)). Rather, "[c]oncerned with the potential for abuse of background evidence as a means to circumvent Rule 404(b), [the Sixth Circuit] ha[s] recognized 'severe limitations as to "temporal proximity, causal relationship, or spatial connections" among the other acts and the charged offense.'" *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013) (quoting *United States v. Clay*, 667 F.3d 689, 698 (6th Cir. 2012)).

The Government's Notice—which dedicates only one paragraph to describing anticipated evidence of "*hundreds* of 'impossible days'", that Dr. Kumar and other providers were "top billers", upcoding, and unbundling—is completely devoid of any such detail. *See* Notice, ECF No. 98, at 7–8. There is no specification whatsoever that these alleged acts of health care fraud have any "temporal proximity, causal relationship, or spatial connection" to Counts 37–46, which, to reiterate, charge Dr. Kumar for billing for unnecessary procedures and/or procedures performed with adulterated and/or misbranded devices. *Cf. United States v. Barnes*, 49 F.3d 1144, 1148–49 (6th Cir. 1995) ("[T]he government's notice must characterize the prior conduct to a degree that fairly apprises the defendant of its general nature. Moreover, the notice given to the defense regarding 'other crimes' evidence must be sufficiently clear so as 'to permit pretrial resolution of the issue of its admissibility.'" (quotation omitted)). Problematically, there is no specification that

these alleged acts of health care fraud relate to the performance of hysteroscopies with biopsy, the only procedure referenced in the Second Superseding Indictment.

The Court should "err on the side of caution" with the Government's proffered *res gestae* evidence and should exclude it because it "serve[s] as a 'backdoor to circumvent [the] goals' of Rule 404(b)." *United States v. Gibbs*, 797 F.3d 416, 423–24 (6th Cir. 2015) (quoting *Clay*, 667 F.3d at 698). Evidence of a defendant's unindicted criminal activity constitutes *res gestae* only if "inextricably intertwined with the criminal act charged or a part of the criminal activity as opposed to extrinsic acts, which are those that occurred at different times and under different circumstances from the offense charged." *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015) (quotation omitted).

Counts 37–46 are the measure of whether the Government's proffered evidence is "inextricably intertwined" with those charges. *See, e.g.*, *id.* Indeed, "after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *United States v. Sittenfeld*, 128 F.4th 752, 775 (6th Cir. 2025) (quoting *Stirone v. United States*, 361 U.S. 212, 215–16 (1960)).

There is *no* allegation in the Second Superseding Indictment that Dr. Kumar billed for "impossible days", that he upcoded procedures when a lesser reimbursement procedure was actually performed, or that he unbundled reimbursement codes. *See Adams*, 722 F.3d at 816 ("The evidence does not serve as 'a prelude to the charged offense' or 'complete the story' because there was no allegation that drug money from Day, Lewis, and Lawson was used to buy votes in the charged conspiracy. Therefore, there was no causal connection."). Those issues are not "a prelude to the charged offense", which hinge solely on (1) whether Dr. Kumar performed unnecessary hysteroscopies with endometrial biopsy; (2) whether Dr. Kumar utilized adulterated and/or

misbranded medical devices during those procedures; and (3) whether Dr. Kumar billed a government health care program for those procedures. Similarly, the other acts of health care fraud do not "complete the story" of the charges in the Second Superseding Indictment. The Government's proposed evidence is not *res gestae* because of its lack of "temporal proximity, causal relationship, or spatial connection" to Counts 37–46 a standard which must be strictly applied. *Id.* at 810. Rather, as explained further below, this proffered evidence hinges solely on uncharged conduct and will cause a "trial within a trial" on uncharged conduct. *See United States v. Yu Qin*, 688 F.3d 257, 263 (6th Cir. 2012).

**B. Admission of other acts of health care fraud is not appropriate under Rule 404(b).**

The Government's proffered evidence may be introduced at trial only if it passes the three-step test that dictates whether evidence of other crimes, wrongs, or acts is admissible under Rule 404(b):

> First, the district court must make a preliminary determination regarding whether there is sufficient evidence that the "other acts" took place. The district court must then determine whether those "other acts" are admissible for a proper purpose under Rule 404(b). Finally, the district court must determine whether the "other acts" evidence is more prejudicial than probative.

*United States v. Bell*, 516 F.3d 432, 440–41 (6th Cir. 2008) (quoting *United States v. Lattner*, 385 F.3d 947, 955 (6th Cir.2004)). The Government's proffered evidence fails under every step of that test.

***1. There is not sufficient evidence to conclude that Dr. Kumar committed other acts of health care fraud.***

Under the first step, "the government cannot introduce evidence of potentially prejudicial similar acts without any substantiation." *Id.*; *see also United States v. Bigham*, 2016 WL 4944138, at *9 (E.D. Mich. Sept. 15, 2026) (analyzing police reports and potential testimony of law

enforcement officers to conclude sufficient evidence existed of prior bad act such that jury could reasonable conclude it occurred). The Government's Notice neither cites to substantiating proof nor details any substantiating evidence for the Court to make this assessment. Rather, the Notice is conclusory and thus insufficient for permitting evidence of other acts of health care fraud at trial. *See United States v. Johnson*, 27 F.3d 1186, 1194 (6th Cir. 1994) (admonishing courts for "a remarkable willingness . . . to readily admit, and in appellate courts to readily approve, other acts evidence without any clear articulation of the specific rationale justifying its admission").

***2. The Government is not offering evidence of other acts of health care fraud for a proper purpose.***

Under the second step, courts must consider whether "(1) the evidence is offered for an admissible purpose, (2) [whether] the purpose for which the evidence is offered is material or 'in issue,' and (3) [whether] the evidence is probative with regard to the purpose for which it is offered." *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003). The Government has no legitimate, alternate purpose other than character or propensity of Dr. Kumar for attempting to introduce these other acts of health care fraud. Other acts evidence is admissible only if "probative of a material issue other than character." *Johnson*, 27 F.3d at 1191. The Government cannot simply state that there is a permissible reason for admitting the evidence. Rather, the Government must "explain why the evidence is relevant and necessary." *United States v. Reed*, 647 F.2d 678, 687 (6th Cir. 1981).

The Government's offered purpose for these other acts of health care fraud are "intent, modus operandi, motive, preparation, and plan." Despite listing six bases for admission, the only articulated reason in support of those offered purposes is as follows:

> It is critical and necessary evidence to ensure jurors have an accurate assessment of Defendant's intent in his fraudulent operation of Poplar Avenue Clinic. Defendant's treatment of patients and

> subsequent billing of the interactions demonstrates how far of an outlier he is from appropriate medical treatment. Additionally, it shows what his intent and motives are for providing the treatment he did and is therefore admissible pursuant to Rule 404(b) to show Defendant's [sic].

Notice, ECF No. 98, at 8. These are conclusory allegations at best and do not explain why evidence of these other acts of health care fraud are "relevant and necessary" for proving Counts 37-46 as it pertains to intent, modus operandi, motive, preparation, or plan. *Reed*, 647 F.2d at 687 (agreeing with Second Circuit's observation that "(c)aution and judgment are called for, and a trial judge faced with another crimes problem should require the Government to explain why the evidence is relevant and necessary" (quoting *United States v. DeVaughn*, 601 F.2d 42, 45 (2d Cir. 1979)).

Though the purposes identified by the Government (intent, modus operandi, motive, preparation, and plan) are potentially permissible bases for the admission of evidence under Rule 404(b), the Government's proffered evidence of other acts of health care fraud are not material or probative of those stated purposes at all as it pertains to Counts 37-46. The first bucket of proffered evidence relates to *how* Dr. Kumar billed for services: allegedly unbundling charges and upcoding charges. The second bucket of proffered evidence relates to *how frequently* Dr. Kumar billed for services: "impossible days" of billing and Dr. Kumar and Poplar Avenue Clinic being "top billers" in the nation. None of this evidence is material or probative of Counts 37–46, in which Dr. Kumar is charged with billing for *unnecessary medical* procedures or procedures *using adulterated and/or misbranded devices*. *See Adams*, 722 F.3d at 817. There are no allegations in the Second Superseding Indictment whatsoever that Dr. Kumar manipulated his billing or billing practices, thus rendering this other acts evidence not probative of the charged conduct whatsoever. *United States v. Love*, 254 F. App'x 511, 515 (6th Cir. 2007) (To be admissible under Rule 404(b), the

other act must "be 'substantially similar and reasonably near in time to the offenses for which the defendant is being tried.'" (quoting *United States v. Carney*, 387 F.3d 436, 451 (6th Cir.2004)); *Yu Qin*, 688 F.3d at 263 (6th Cir. 2012) ("Pilfering office supplies—or discarded electrical parts, for that matter—and conducting personal business on company time may well constitute theft, but they are of a fundamentally different character than stealing trade secrets, which involves gaining unauthorized access to highly confidential and valuable intellectual property and converting that information for one's own economic benefit.").

***3. Evidence of other acts of health care fraud should be excluded under Federal Rule of Evidence 403.***

Even if the Government could somehow establish that it is offering this evidence for a permissible, non-propensity purpose, it cannot pass the required balancing under Federal Rule of Evidence 403 because the minimal probative value of the evidence is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time. Fed. R. Evid. 403. "A legitimate component of [the Rule 403] weighing process is the trial court's informed judgment whether despite the 'technical' admissibility of the other acts evidence, the jurors are more likely than not to use the evidence for the very purpose for which the first sentence of [Rule 404(b)] states that it may not be used." *Hardy*, 228 F.3d at 750 (quotation omitted). "[T]he likelihood is very great that the jurors will use the evidence precisely for the purpose it may not be considered; to suggest that the defendant is a bad person, a convicted criminal, and that if he 'did it before he probably did it again.'" *Johnson*, 27 F.3d at 1193; *United States v. Owen*, 2024 WL 815529, at *10 (W.D. Ky. Feb. 27, 2024) (excluding other acts evidence because it was "highly prejudicial, as it amount[ed] to an additional uncharged count of bank fraud"). To allow the Government to introduce other acts of health care fraud that are not included in the Superseding Indictment runs the risk that the Rules of Evidence aim to protect: that the jury

will convict Dr. Kumar based upon other acts, and not those charged in the Second Superseding Indictment. *Asher*, 910 F.3d at 862 ("This risk [of propensity reasoning] is heightened when the prior act is much like the charged conduct.").

Evidence of other acts of health care fraud will also confuse the issues before the jury, cause undue delay, and mislead the jury because the parties will be required to conduct "trials within a trial", which is already scheduled to last for approximately 17 days. There will be competing evidence on whether Dr. Kumar actually committed these other acts of health care fraud. *See Yu Qin*, 688 F3d at 264 (stating the concern for undue delay is that whether the allegations of defendant's other actions "are with or without merit could result in a trial within a trial" and stating that, in that case, "the risk of undue delay is substantial enough that it is likely sufficient in itself to justify exclusion of the evidence under Rule 403"). Additional testimony will be needed to explain billing to government health care benefit programs, bundling and unbundling billing codes, and upcoding procedures. "The amount of time and the number of witnesses needed to present and rebut these allegations would almost certainly influence the jury's perception of its relative importance and could cause confusion that this alleged conduct is part of the criminal charges for which [Dr. Kumar is] on trial." *Id.* (excluding evidence under Rule 403 by focusing on the scheme or plan charged in the indictment). All in the middle of a complex case regarding the medical necessity of gynecological treatments for the purpose of diagnosing cancer.

## II. Federal Rule of Evidence 403 bars the entry of evidence of failure to collect co-pays.

Even if the Government could prove that Dr. Kumar's and/or Poplar Avenue Clinic's failure to collect co-pays is intrinsic to Counts 37–46 or is otherwise properly admissible under Rule 404(b), the evidence must be excluded under Federal Rule of Evidence 403 because its minimal

probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, and undue delay. Fed. R. Evid. 403.

There is a "great" likelihood "the jurors will use the evidence [of failure to collect co-pays] precisely for the purpose it may not be considered: to suggest that [Dr. Kumar] is a bad person.'" *Johnson*, 27 F.3d at 1193; *Owen*, 2024 WL 815529, at *10. This case is exactly like *United States v. Walters*, a health care fraud matter in which the government intended to offer evidence of defendants making kickback payments "to induce referrals for unnecessary urine drug testing so that they could bill insurance companies for such services." *United States v. Walters*, 226 F. Supp. 3d 821, 824 (E.D. Ky. 2016) (applying Rule 403 balancing test in context of Rule 404(b) analysis). The court held that the evidence "[did] little to prove Defendants actually defrauded Medicaid and Medicare and instead suggests to the jury that Defendants are generally engaged in shady business practices." *Id.* at 825 ("Inappropriate payment arrangements do not, by default, indicate intent to defraud. It is certainly possible for an individual or entity to make illicit payments in order to obtain what would otherwise constitute legitimate business."). In excluding the evidence, the court noted that "[t]his is exactly what Rule 404(b) is designed to prevent—the rule helps ensure a defendant is convicted for something he *did* rather than for who he *is*, or who the jury perceives him to be." *Id.* (emphasis in original).

Evidence of Dr. Kumar and/or Poplar Avenue Clinic's failure to collect copayments should be excluded for the same reasons as articulated in *Walters*. The evidence has minimal probative value and suggests to the jury that Dr. Kumar and/or Poplar Avenue clinic "engaged in shady business practices." *Id.* This evidence is substantially more prejudicial than probative and should thus be excluded.

In addition to prejudice, admitting the evidence will also cause undue delay by creating a "trial within a trial" on whether co-pays were not collected from patients for the purpose of inducing them to receive unnecessary medical procedures. This will further extend the length of trial, which is already estimated to last approximately 17 days, because there would also need to be testimony about whether the procedures those patients received were unnecessary. Further, the Government will have to make a link between Dr. Kumar and/or Poplar Avenue Clinic not accepting co-pays for the purpose of inducing patients to receive unnecessary procedures. This will further require additional testimony about the Clinic's co-pay collection practices and whether the co-pays were or were not collected. Such evidence and testimony will mislead the jury as to the issues to be decided because whether co-pays were collected is not an element of Counts 37-46, indeed reflected by the fact that this evidence is not mentioned in the Second Superseding Indictment whatsoever.

## CONCLUSION

For the foregoing reasons, Dr. Kumar respectfully requests that the Court grant this Motion in *Limine* and exclude under Federal Rules of Evidence 401, 402, 403, and 404(b), any evidence or argument concerning alleged other acts of health care fraud that are not charged in the Superseding Indictment and any evidence that Dr. Kumar and/or Poplar Avenue Clinic failed to collect copayments from patients. Dr. Kumar submits that the Government has no proper purpose for the introduction of such evidence, but even if that were not the case, the evidence's probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time

Respectfully submitted,

s/ Elena R. Mosby

Lawrence J. Laurenzi (TN BPR No. 9529)
Elena R. Mosby (TN BPR No. 40562)
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 38103
901-524-5000
llaurenzi@bpjlaw.com
emosby@bpjlaw.com

Maritsa A. Flaherty (*pro hac vice*) (Cal. Bar No. 327638)
CHAPMAN LAW GROUP
1441 W. Long Lake Rd., Suite 310
Troy, Michigan 48098
(248) 644-6323
mflaherty@chapmanlawgroup.com

Ronald Chapman, II (*pro hac*) (Mich. Bar No. P73179)
THE CHAPMAN FIRM
1300 Broadway
Detroit, MI 48226
Phone: (346) Chapman
Ron@chapmanandassociates.com

*Attorneys for Dr. Sanjeev Kumar*

**NOTICE OF CONSULTATION**

Counsel for Dr. Kumar, Elena R. Mosby, consulted with counsel for the Government, Lynn Crum, on October 27, 2025, via e-mail about the instant motion. On November 3, 2025, Ms. Crum e-mailed Ms. Mosby and stated the Government intended to no longer introduce evidence of impossible days of billing. The Government opposes the instant motion otherwise and thus the Parties are unable to reach an accord as to all issues, except for the impossible days of billing.

s/ Elena R. Mosby