**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

**v.**                                     **Cr. No. 2:25cr20032-SHL**

**SANJEEV KUMAR,**

       **Defendant.**

---

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE GOVERNMENT'S EVIDENCE
OF NON-NOTICED EXPERT OPINIONS AND IMPROPERLY NOTICED EXPERT
OPINIONS AND INCORPORATED MEMORANDUM IN SUPPORT**

---

Defendant Dr. Sanjeev Kumar, by and through undersigned counsel and pursuant to Federal Rules of Evidence 401, 402, 403, and 404(b), 701, 702, 703, and 704 respectfully moves this Court to exclude evidence of non-noticed expert opinions, improper lay opinions, and/or improper noticed expert opinions.

The Government provided notice of its intention to introduce non-noticed expert opinion evidence, and improper layperson opinion testimony pursuant to Rule 404(b), which includes evidence of "other acts" of medically unnecessary procedures. The Government claims that this evidence is intrinsic to the conduct charged in Counts 37–46 of the Second Superseding Indictment, which narrowly charge Dr. Kumar with committing health care fraud by billing government benefit health care programs for unnecessary medical procedures or those conducted with adulterated or misbranded devices.  Additionally, through discussions with and reports produced by the Government, it is anticipated they will attempt to admit additional non-noticed expert opinions, improper lay opinions, and/or improper noticed expert opinions related to medical diagnosis, medical standards, medical necessity, and scientific observations.

## BACKGROUND

Counts 37 through 46 of the Second Superseding Indictment charge Dr. Kumar with committing health care fraud, in violation of 18 U.S.C. §§ 1347 and 2. (Second Superseding Indictment, ECF No. 135, at 21–28.)  A close read of the Second Superseding Indictment demonstrates that those charges are quite narrow.  In Counts 37–45, the Government alleges that Dr. Kumar billed government health care benefit programs for unnecessary hysteroscopy with endometrial biopsy procedures for the nine patients listed therein.  (*Id.* at 26–27.)  Count 46 goes a short step farther to charge Dr. Kumar with committing health care fraud by performing those procedures with adulterated or misbranded devices.  Notably, there are no allegations in Count 46—or anywhere else in the Second Superseding Indictment—that Dr. Kumar performed other unnecessary procedures. To be clear, the Second Superseding Indictment only sets forth allegations that Dr. Kumar performed unnecessary medical procedures and/or used adulterated or misbranded devices in the process of performing those procedures and billed government health care benefit programs for those procedures. [1]

---

[1] On its face, Count 46 appears to be broad in scope, charging Dr. Kumar with "submit[ing] and caus[ing] to be submitted, and attempt[ing] to do so, claims for reimbursement for Counsel for hysteroscopy services to health care benefit programs that were false and fraudulent, in that he falsely attested that he followed all pertinent rules and regulations in providing these services, including that the devices used during the procedures comported with all applicable regulations and were approved for use in patient care." (Second Superseding Indictment, ECF No. 135, at 27–28.)  Given the count's broad scope, counsel for Dr. Kumar was concerned with the constitutionality of the count and conferred in good faith with counsel for the Government as to the basis for Count 46 (in the original indictment, Count 23) during the time period for filing dispositive motions.  During Dr. Kumar's reverse proffer, the Government stated that the basis for this additional health care fraud count was that allegedly Dr. Kumar submitted false statements when billing that all devices were properly used, Dr. Kumar trained medical staff to perform hysteroscopies regardless of the patient's medical history, and that Dr. Kumar performed medically unnecessary procedures.  Stated differently, Count 46 charges Dr. Kumar for billing for medically unnecessary procedures or those performed with adulterated and/or misbranded devices and thus is not broad in scope.

2

The Government's Expert Disclosures follow the allegations in the Second Superseding Indictment, in that they are narrowly tailored to testimony related to alleged medically unnecessary hysteroscopy with endometrial biopsy procedures.  (*United States' Rule 16 Expert Witness Disclosure*, ECF No. 65; and *United States' Rule 16 Expert Witness Disclosure*, ECF No. 115, at 5–6.)  Yet, the Government's *Notice of Intent to Offer Evidence Under Federal Rule of Evidence 404(b)* (hereinafter "Notice"), states that it intends to offer "additional unnecessary medical procedures and surgeries conducted by" Dr. Kumar and other Poplar Avenue Clinic providers. (ECF No. 98 at 5.)  The Government intends to introduce evidence that Dr. Kumar "performed procedures that were outside his expertise, including Uterine Fibroid Embolization procedures, mole removal on non-pelvic regions, and managing psychiatric medication." (*Id*.)   The Government claims that this evidence is intrinsic to the charges against Dr. Kumar because "[p]atients will be describing their treatment" and it shows Dr. Kumar's intent and motives.  (*Id*.) The Government further alleges, without more, that such evidence is "less prejudicial than the evidence of unnecessary hysteroscopies," and that it will not mislead or confuse the jury. (*Id.*)  In their limited analysis balancing the probative nature over the danger of unfair prejudice, the Government alleges Dr. Kumar "tried to influence at least one provider with similar experience to him to practice in the same manner." (*Id*.) Overall, the Government's Notice is light on detail as to what evidence they intend to introduce and provides mostly conclusory allegations as to why evidence of other acts of unnecessary procedures is admissible.

Likewise, the Government has proposed to offer non-expert opinion testimony. Such testimony consists of noticed 404(b) testimony, and anticipated testimony continuously produced throughout their reports related to medical diagnosis, medical standards, medical necessity, and scientific observations. Specifically, the Government noticed its intent to offer evidence "that at

least one patient was HIV positive when she was treated" by Dr. Kumar. (*Id.* at 6.) Despite having no evidence to support this allegation, the Government claims that Dr. Kumar should have taken "special precautionary measures with an HIV positive patient before or after her hysteroscopy procedure." (*Id.*) Again, the Government makes the conclusory statement that "[t]he evidence presents no danger of confusion of the issues, misleading the jury…." (*Id.*)

Dr. Kumar anticipates the Government will attempt to offer non-noticed expert opinions, through the use of both non-noticed experts and lay person testimony relating to medical diagnosis, medical standards, medical necessity, and scientific observations. The anticipated testimony includes reference to unnecessary hysteroscopy procedures, other unnecessary procedures, medical diagnosis, including the transmission of sexually transmitted diseases, and identification of "floating tissue samples" or "debris," without the proper notice, expert designations, or qualifications. Though the Government did not explicitly note in their expert disclosures, nor in their 404(b) notice, their intent to offer this evidence at trial, upon consultation with the Government they did not agree to *exclude* such evidence. Therefore, due to the highly prejudicial nature of the admission of such inadmissible evidence, Dr. Kumar brings this Motion.

Finally, the Government seeks to admit improper opinion testimony from their noticed expert, Dr. Matt McDonald. In their Rule 16 Notice, the Government provides "Dr. Matt McDonald will testify" to his opinion that Dr. Kumar was "motivated by the compensation provided by the procedural based encounters…." (*United States' Rule 16 Expert Witness Disclosure*, ECF No. 65, at 1 and 6.)

## **STANDARD**

The Federal Rules of Evidence permit opinion testimony in limited circumstances. For non-designated experts, opinion testimony "is limited to one that is: (a) rationally based on the

witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Even if designated as an expert, there are limitations on opinion testimony. Expert testimony must: "(a) … help the trier of fact to understand the evidence or to determine a fact in issue; (b) …[be] based on sufficient facts or data; (c) … [be] the product of reliable principles and methods; and (d) … "reflect[] a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. Such limited opinion testimony may be based on "facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. However, "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b).

Evidence remains subject to Rules 401, 403 and 404(b), in that it must still be relevant, its probative value must outweigh its unfair prejudicial value, and it must not be improper character evidence. "Evidence is relevant if . . . it has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." Fed. R. Evid. 401. To be relevant, evidence must, at least, be "a step on one evidentiary route to the ultimate fact" at issue. *Old Chief v. United States*, 519 U.S. 172, 179 (1997). "Rule 401 is not a standalone rule. Rule 402 says that the general admissibility of relevant evidence must yield to other Rules." *United States v. Hazelwood*, 979 F.3d 398, 409 (6th Cir. 2020).

Rule 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also*

*United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018). The Sixth Circuit has defined unfair prejudice as the "'undue tendency to suggest a decision based on improper considerations,' like the chance that the jury will convict the defendant because of his prior, instead of his charged, conduct." *Asher*, 910 F.3d at 861 (quoting *United States v. Bilderbeck*, 163 F.3d 971, 978 (6th Cir. 1999)). "One form of unfair prejudice involves the risk that the prior act could cause the jury to reach a verdict based on emotions instead of evidence." *Id.* at 861. "Another risk of unfair prejudice . . . involves the tendency of the evidence to lure the factfinder into an impermissible propensity line of reasoning—'generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged.'" *Id.* at 862 (quoting *Old Chief*, 519 U.S. at 180.) "Where . . . the probative value of the evidence is modest . . . , courts must be especially careful not to allow that evidence to reach the jury if the evidence is unduly prejudicial." *Id.* at 863.

Rule 404 prohibits the admission of "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence may be admissible only for non-propensity purposes—such as "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"—and only after the Government provides sufficient reasonable notice to the defendant. Fed. R. Evid. 404(b)(2), (3).

## LAW AND ARGUMENT

I.    **Non-noticed expert opinion testimony regarding other medically "unnecessary" procedures should be excluded as it is not intrinsic, and it is inadmissible pursuant to Rule 701(c) and 404(b).**

The Government seeks to introduce "other acts" evidence that Dr. Kumar and other Poplar Avenue Clinic providers conducted "additional unnecessary medical procedures and surgeries."

6

(ECF No. 98 at 5.)  The Government offers no specifics, except that they intend to introduce evidence that Dr. Kumar "performed procedures that were outside his expertise, including Uterine Fibroid Embolization procedures, mole removal on non-pelvic regions, and managing psychiatric medication." (*Id*.)  The Government claims that this evidence is intrinsic to the charges against Dr. Kumar because "[p]atients will be describing their treatment" and it shows Dr. Kumar's intent and motives.  (*Id*.)  The Government alleges Dr. Kumar "tried to influence at least one provider with similar experience to him to practice in the same manner." (*Id*.) The Government blanketly proclaims, without more, that such evidence is "less prejudicial than the evidence of unnecessary hysteroscopies," and that it will not mislead or confuse the jury. (*Id.*)  Overall, the Government's Notice provides mostly conclusory allegations as to why evidence of other acts of unnecessary procedures is admissible. Such conclusions are misplaced, as non-noticed expert opinion testimony regarding other procedures is not permissible under Rule 701(c), 404(b), or as intrinsic evidence.

## A.   Non-noticed expert opinion testimony regarding other medically "unnecessary" procedures should be excluded under Rule 701(c).

Because the determination of medical necessity inherently relies on "scientific, technical, or other specialized knowledge" such *non-noticed* expert opinion testimony is not admissible. Fed. R. Evid. 701(c). Patients "describing their treatment" is insufficient as a basis for the admission of testimony as to medical necessity. Notably, none of these allegations are provided in the Second Superseding Indictment. (ECF No. 135.) Nor are any expert opinions related to such testimony provided in the Government's Expert Disclosures. (*United States' Rule 16 Expert Witness Disclosure*, ECF No. 65; and *United States' Rule 16 Expert Witness Disclosure*, ECF No. 115, at 5–6.)  Both the Second Superseding Indictment and the Expert Disclosures are in fact narrowly tailored to allegations of medically unnecessary hysteroscopy with endometrial biopsy procedures.

(*Id.*) The admission of "other acts" of medically unnecessary procedures, without more, cannot be admitted pursuant to Rule 701(c).

> **B.    Evidence of other medically unnecessary procedures not charged in the Superseding Indictment is not *res gestae* to Counts 37–46.**

The concept of *res gestae* does not give the Government "unfettered rein" to introduce evidence of other acts of health care fraud at trial. *United States v. Brown*, 888 F.3d 829, 838 (6th Cir. 2018) (quoting *Hardy*, 228 F.3d at 749)). Rather, "[c]oncerned with the potential for abuse of background evidence as a means to circumvent Rule 404(b), [the Sixth Circuit] ha[s] recognized 'severe limitations as to "temporal proximity, causal relationship, or spatial connections" among the other acts and the charged offense.'" *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013) (quoting *United States v. Clay*, 667 F.3d 689, 698 (6th Cir. 2012)).

The Government's Notice—which alleges only that Dr. Kumar performed procedures that were outside his expertise, including Uterine Fibroid Embolization procedures, mole removal on non-pelvic regions, and managing psychiatric medication—is completely devoid of any such detail. (*See* Notice, ECF No. 98, at 5.) There is no specification whatsoever that these alleged acts of other medically unnecessary procedures have any "temporal proximity, causal relationship, or spatial connection" to Counts 37–46, which, to reiterate, charge Dr. Kumar for billing for unnecessary hysteroscopy with endometrial biopsy procedures and/or procedures performed with adulterated and/or misbranded devices. *Cf. United States v. Barnes*, 49 F.3d 1144, 1148–49 (6th Cir. 1995) ("[T]he government's notice must characterize the prior conduct to a degree that fairly apprises the defendant of its general nature. Moreover, the notice given to the defense regarding 'other crimes' evidence must be sufficiently clear so as 'to permit pretrial resolution of the issue of its admissibility.'" (quotation omitted)). Problematically, there is no specification that these alleged acts of uterine fibroid embolization, mole removal, or psychiatric medication, relate to the

performance of hysteroscopies with biopsy, the only procedure referenced in the Second Superseding Indictment. In fact, the Government provides no specific evidence whatsoever over who, what, when, or how these alleged unnecessary procedures were performed.

The Court should "err on the side of caution" with the Government's proffered *res gestae* evidence and should exclude it because it "serve[s] as a 'backdoor to circumvent [the] goals' of Rule 404(b)." *United States v. Gibbs*, 797 F.3d 416, 423–24 (6th Cir. 2015) (quoting *Clay*, 667 F.3d at 698). Evidence of a defendant's unindicted criminal activity constitutes *res gestae* only "inextricably intertwined with the criminal act charged or a part of the criminal activity as opposed to extrinsic acts, which are those that occurred at different times and under different circumstances from the offense charged." *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015) (quotations omitted).

Counts 37-46 are the measure of whether the Government's proffered evidence is "inextricably intertwined" with those charges. *See, e.g.*, *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015). Indeed, "after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *United States v. Sittenfeld*, 128 F.4th 752 (6th Cir. 2025) (quoting *Stirone v. United States*, 361 U.S. 212, 215–16 (1960)).

There is *no* allegation in the Second Superseding Indictment that Dr. Kumar billed for any medically unnecessary procedures other than the narrowly tailored counts related to hysteroscopy with biopsy. *See United States v. Adams*, 722 F.3d 788, 816 (6th Cir. 2013) ("The evidence does not serve as 'a prelude to the charged offense' or 'complete the story' because there was no allegation that drug money from Day, Lewis, and Lawson was used to buy votes in the charged conspiracy. Therefore, there was no causal connection."). Those issues are not "a prelude to the charged offense", which hinge solely on (1) whether Dr. Kumar performed unnecessary

9

hysteroscopies with endometrial biopsy; (2) whether Dr. Kumar utilized adulterated and/or
misbranded medical devices during those procedures; and (3) whether Dr. Kumar billed a
government health care program for those procedures.  The Government's proposed evidence is
not *res gestae* because of its lack of "temporal proximity, causal relationship, or spatial connection"
to Counts 37-46 a standard which must be strictly applied.  *Adams*, 722 F.3d at 810.  Rather, as
explained further below, this proffered evidence hinges solely on uncharged conduct and will cause
a "trial within a trial" on uncharged conduct.  *See United States v. Yu Qin*, 688 F.3d 257, 263 (6th
Cir. 2012).

> **C.    Evidence of other medically unnecessary procedures not charged in the
> Superseding Indictment is not admissible under Rule 404(b).**

The Government's proffered evidence cannot pass the three-step test that dictates whether
evidence of other crimes, wrongs, or acts is admissible under Rule 404(b):

> First, the district court must make a preliminary determination
> regarding whether there is sufficient evidence that the "other acts"
> took place. The district court must then determine whether those
> "other acts" are admissible for a proper purpose under Rule 404(b).
> Finally, the district court must determine whether the "other acts"
> evidence is more prejudicial than probative.

*United States v. Bell*, 516 F.3d 432, 440–41 (6th Cir. 2008) (quoting *United States v. Lattner*, 385
F.3d 947, 955 (6th Cir.2004)).  The Government's proffered evidence fails under every step of that
test.

> **1.    There is not sufficient evidence to conclude that Dr. Kumar committed other acts
> of medically unnecessary procedures.**

Under the first step, "the government cannot introduce evidence of potentially prejudicial
similar acts without any substantiation."  *Id.*; *see also United States v. Bigham*, 2016 WL 4944138,
at *9 (E.D. Mich. Sept. 15, 2026) (analyzing police reports and potential testimony of law
enforcement officers to conclude sufficient evidence existed of prior bad act such that jury could

reasonable conclude it occurred).  The Government's Notice neither cites to a source, nor details any substantiating evidence for the Court to make this assessment.  This is especially concerning when such evidence proffered requires specialized knowledge, training, and expertise, i.e. from a medical professional. The Government makes no attempt to disclose such expert testimony. As stated above, instead they focus their expert testimony only on the alleged medically unnecessary hysteroscopy with biopsy procedures. Rather, the Notice is conclusory and thus insufficient for permitting evidence of other acts of medically unnecessary procedures at trial.  *See United States v. Johnson*, 27 F.3d 1186, 1194 (6th Cir. 1994) (admonishing courts for "a remarkable willingness . . . to readily admit, and in appellate courts to readily approve, other acts evidence without any clear articulation of the specific rationale justifying its admission").  Dr. Kumar denies each and every allegation presented by the Government.  *Yu Qin*, 688 F.3d at 262 (stating a defendant may "refute the government's allegations with proof of his own, attempting to establish for the jury that the allegations are unfounded").

### 2.  *The Government is not offering evidence of other acts of medically unnecessary procedures for a proper purpose.*

Under the second step, courts must consider whether "(1) the evidence is offered for an admissible purpose, (2) [whether] the purpose for which the evidence is offered is material or 'in issue,' and (3) [whether] the evidence is probative with regard to the purpose for which it is offered."  *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003).  The Government has no legitimate, alternate purpose other than character or propensity of Dr. Kumar for attempting to introduce these other acts of medically unnecessary services.  Other acts evidence is admissible only if "probative of a material issue other than character." *United States v. Johnson*, 27 F.3d 1186, 1191 (6th Cir. 1994).  The Government cannot simply state that there is a permissible reason for

admitting the evidence. Rather, the Government must "explain why the evidence is relevant and necessary." *United States v. Reed*, 647 F.2d 678, 687 (6th Cir. 1981).

The Government's offered purpose for these other acts of medically unnecessary procedures are "intent, modus operandi, motive, preparation, and plan." Despite listing six bases for admission, the only articulated reason in support of those offered purposes is "[p]atients will be describing their treatment" and it shows Dr. Kumar's intent and motives. (ECF No. 98, at 5.) The proffered basis for admission does not make an honest attempt at explaining why evidence of these other acts of medically unnecessary services are "relevant and necessary" for proving Counts 37-46 as it pertains to intent, modus operandi, motive, preparation, or plan. *Reed*, 647 F.2d at 687 (agreeing with Second Circuit's observation that "(c)aution and judgment are called for, and a trial judge faced with another crimes problem should require the Government to explain why the evidence is relevant and necessary" (quoting *United States v. DeVaughn*, 601 F.2d 42, 45 (2d Cir. 1979).).

Though the purposes identified by the Government (intent, modus operandi, motive, preparation, and plan) are potentially permissible bases for the admission of evidence under Rule 404(b), the Government's proffered evidence of other acts of medically unnecessary procedures are not material or probative of those stated purposes at all as it pertains to Counts 37-46. *Cf. Huddleston v. United States*, 485 U.S. 681, 689 (1988) ("Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case.").

The proffered evidence relates to procedures not tied in any way to the performance of a hysteroscopy or biopsy procedures, and the Government does nothing to attempt to make the connection. None of this evidence is material or probative of Counts 37-46, in which Dr. Kumar

12

is charged with billing for *unnecessary hysteroscopy with biopsy medical* procedures or procedures *using adulterated and/or misbranded devices*. *See United States v. Adams*, 722 F.3d 788, 817 (6th Cir. 2013). There are no allegations in the Second Superseding Indictment whatsoever that Dr. Kumar billed for medically unnecessary uterine fibroid embolization, mole removal, or psychiatric medications, thus rendering this other acts evidence not probative of the charged conduct whatsoever. *United States v. Love*, 254 F. App'x 511, 515 (6th Cir. 2007) ("To be admissible under Rule 404(b), the other act "must also be 'substantially similar and reasonably near in time to the offenses for which the defendant is being tried.'"); *United States v. Yu Qin*, 688 F.3d 257, 263 (6th Cir. 2012) ("Pilfering office supplies—or discarded electrical parts, for that matter—and conducting personal business on company time may well constitute theft, but they are of a fundamentally different character than stealing trade secrets, which involves gaining unauthorized access to highly confidential and valuable intellectual property and converting that information for one's own economic benefit.").

## II.    <u>Non-noticed expert testimony or improper layperson opinion testimony regarding medically "unnecessary" hysteroscopy procedures pursuant to Rule 701 and Crim. Rule of Proc. 16.</u>

For non-designated experts, opinion testimony "is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. The identification of whether or not a hysteroscopy with biopsy is medically necessary, is a determination that relies on scientific, technical, or other specialized knowledge. Layperson opinion testimony related to medical necessity is not permissible.

13

It is precisely for this reason that both the Government and Dr. Kumar have identified expert witnesses with the proper background, training and expertise who can properly review and analyze the medical records, using their training, experience, and expertise and formulate an opinion to a reasonable degree of medical certainty. Criminal Rule of Procedure 16 provides the requirements for a party to notify the opposing party of such designated experts. That has been done in this case. Despite this, the Government's Notice seeks to admit evidence that seems to rely on layperson opinions or non-disclosed expert opinions related to unnecessary hysteroscopy procedures. Therefore, Dr. Kumar seeks to exclude any non-noticed expert testimony, as well as any improper layperson opinion testimony related to medically unnecessary hysteroscopy with biopsy procedures.

**III.** **Non-noticed expert opinion testimony or improper layperson opinion testimony regarding HIV and other sexually transmitted diseases should be excluded pursuant to Federal Rules of Evidence 701(c) and 403.**

The Government seeks to admit non-noticed expert testimony and/or improper layperson opinion testimony regarding patients with HIV and other sexually transmitted diseases ("STDs"). Specifically, the Government noticed its intent to offer evidence "that at least one patient was HIV positive when she was treated" by Dr. Kumar. (*Notice,* ECF No. 98 at 6.) Despite having no evidence to support this allegation, the Government claims that Dr. Kumar should have taken "special precautionary measures with an HIV positive patient before or after her hysteroscopy procedure." (*Id.*) Additionally, reports produced by the Government, throughout the investigation, identify patients who allege they have STDs. Though not explicitly noticed, nor clearly articulated, it appears the Government is seeking admission of such evidence for the jury to draw the improper conclusion that patients received STDs from receiving care at Poplar Avenue Clinic. For the jury to reach such a conclusion, the basis must rely on expert opinion testimony that outlines the manner

14

and means in which STDs can be transferred, proximate causation, as well as the proper protocols to prevent spread of the diseases. Without this, such a conclusion is incorrect, improper, not based on science, and impermissible under the Federal Rules of Evidence.

Whether a patient has a specific disease, such as HIV, may be permissible evidence with the proper foundation. However, the Government's claim that Dr. Kumar should have taken "*special* precautionary measures with an HIV positive patient before or after her hysteroscopy procedure" is not. (*Id*.) (emphasis added.) The Government has not identified any expert witness which will testify to this statement, nor can they. The opposite is true. No *disease specific* special precautions are required by the Center for Disease Control ("CDC") or other regulatory body to prevent the spread of STDs, including HIV. (*See Sanjeev Kumar, M.D.'s Rule 16 Expert Witness Disclosure,* ECF No. 123.) Instead, the CDC's guidance is based on the type of procedure. In fact, "[a] 'low level' disinfection (LLD) kills most vegetative bacteria (*S. aureus, S. Choleraeuis, P. aeruginosa, M. bovis*), fungi (*Trichophyton mentagrophytes*), and lipid/enveloped viruses (coronavirus, CMV, influenza, HIV, HSV)." (*Id.* at 4.) Regardless of any disputed opinions, what is clear is that the Government's attempt to proffer opinion evidence regarding "special precautionary measures" requires "scientific, technical, or other specialized knowledge." Fed. R. Evid. 701(c). Therefore, absent an expert who can testify that Dr. Kumar was required to perform "special precautionary measures" for patients with HIV, such testimony not admissible under Rule 701(c). Because the Government has not provided notice of such expert opinion, the evidence should be excluded.[2]

---

[2] The Government's attempt to circumvent Rule 701 by offering the evidence as Rule 404(b) "other acts" evidence likewise fails. Rule 404(b) requires the Court to determine, "whether there is sufficient evidence that the 'other acts' took place … **whether those 'other acts' are admissible for a proper purpose** under Rule 404(b) … and whether the 'other acts' evidence is more

For the same reasons as above, testimony that patients have contracted STDs after being a patient at Poplar Avenue Clinic without a proper foundation, proximate causation, or expert testimony is impermissible. Because the Government has not provided expert notice of such testimony, it should be excluded. Additionally, such testimony is inadmissible pursuant to Rule 403, which permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018). "Where . . . the probative value of the evidence is modest . . . , courts must be especially careful not to allow that evidence to reach the jury if the evidence is unduly prejudicial." *Id.* at 863.

Here, there is little probative value to lay witness's opinion testimony regarding contracting a STD, without proof of such diagnosis or proximate causation. Such testimony is speculative at best. While there is little probative value, such testimony is highly and unduly prejudicial. Which is no doubt, why the Government seeks to admit such evidence. Because the danger of unfair prejudice is so great, pursuant to Rule 403, any layperson testimony regarding STDs should be excluded.

### IV.    <u>Non-noticed expert opinion testimony or improper layperson opinion testimony regarding "floating tissue samples" or "debris" should be excluded pursuant to Federal Rules of Evidence 701 and 403.</u>

Finally, the Government seeks to admit improper layperson opinion testimony regarding "floating tissue samples" or "debris." With the exception of one designated expert (*United States'*

---

prejudicial than probative." *Bell*, 516 F.3d at 440–41. (emphasis added.) Here, they cannot show the evidence is admissible for a proper purpose, as it is improper opinion testimony.

*Rule 16 Expert Witness Disclosure*, ECF No. 67), the Government has not identified any other experts which can testify as to the identification of "floating tissue samples" found on the seized devices, yet they have produced reports in discovery in which non-experts formed these opinions. Specifically, Office of Inspector General Special Agent Edward Miller documented in one of his reports that "[w]ithin the solution was what appeared to be floating tissue samples and other debris." Additionally, Government agents elicited statements from Rowena Schimmel, a CooperSurgical Sales Representative regarding her lay opinion after viewing photographs from the search warrant (though it is unclear what photographs she was shown). Ms. Schimmel expressed her opinion that "the photos depict debris and discoloration," which she alleged "was likely from the devices being used on patients."

For non-designated experts, opinion testimony "is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. The identification of "floating tissue samples" or even "debris" are determinations that rely on scientific, technical, or other specialized knowledge, such lay person opinions are not permissible.

It is precisely for this reason that both the Government and Dr. Kumar have identified expert witnesses that can properly review and analyze the devices to determine what, if anything, was found on the seized devices. Specifically, during their investigation, the Government sent the devices to multiple laboratories for scientific analysis. Ultimately, they provided an expert notice of Hannah E. Godschalk, a chemist in the Trace Examination Section at the Organica Laboratory Branch of the National Forensic Chemistry Center at the U.S. Food and Drug Administration.

(ECF 67.) Such notice emphasizes the scientific background, training, and methodology required to analyze substances before forming an opinion that something is a "tissue sample" or "debris."

Ms. Schimmel's opinion that a device was "likely … used on patients" is also impermissible. The formation of such opinion relies on "scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. Yet, she has not articulated any scientific background, training, or methodology which form the basis of her opinion. As the identified experts emphasize, there are a myriad of scientific conclusions that can *and cannot* be made based on a proper trace analysis of the devices. To form the opinion that the devices were used on patients, without any such scientific analysis is improper and clearly prohibited by Rule 701.

Layperson opinion testimony regarding "tissue samples" or "debris" are likewise inadmissible pursuant to Rule 403, which permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also Asher*, 910 F.3d at 860. "Where . . . the probative value of the evidence is modest . . . , courts must be especially careful not to allow that evidence to reach the jury if the evidence is unduly prejudicial." *Id.* at 863.

Here, there is little probative value to lay witness's opinion testimony regarding "tissue samples" or "debris." However, such testimony is highly prejudicial. The basis for Counts 1 through 36 of the Second Superseding Indictment is the Government's theory that certain seized medical devices were re-used. A layperson opining on the ultimate issue in the case, i.e. whether a device was used or re-used, is unduly prejudicial. Such prejudice cannot be justified in this case by a lay person's improper opinion without any basis for such opinion. Absent either witness's identification of an expert along with their background, training, and the methodology for reaching

18

such conclusion, such evidence should be excluded pursuant to Federal Rules of Evidence 701 and

403.

**V.      Improper opinion testimony by Dr. Matt McDonald should be excluded
        pursuant to Federal Rules of Evidence 702 and 704(b).**

The Government inexplicably seeks to admit improper opinion testimony from their

noticed expert, Dr. Matt McDonald regarding Dr. Kumar's motivations. In their Rule 16 Notice,

the Government provides "Dr. Matt McDonald will testify" to his opinion that Dr. Kumar was

"motivated by the compensation provided by the procedural based encounters…." (*United States'*

*Rule 16 Expert Witness Disclosure*, ECF No. 65, at 1 and 6.) Dr. McDonald provided no rational

for how he came to that conclusion and certainly cited no scientific evidence or methodology that

supported such opinion.

Expert testimony must: "(a) … help the trier of fact to understand the evidence or to

determine a fact in issue; (b) …[be] based on sufficient facts or data; (c) … [be] the product of

reliable principles and methods; and (d) … "reflect[] a reliable application of the principles and

methods to the facts of the case." Fed. R. Evid. 702. However, "[i]n a criminal case, an expert

witness must not state an opinion about whether the defendant did or did not have a mental state

or condition that constitutes an element of the crime charged or of a defense. Those matters are for

the trier of fact alone." Fed. R. Evid. 704(b).

Here, Dr. McDonald's opinion regarding Dr. Kumar's motivations fail under both Federal

Rule of Evidence 702 and 704(b). First, his opinion is not based on "facts or data," or "the produce

of reliable principles and methods." Fed. R. Evid. 702(b). Instead, he offers no justification or

explanation for how he came to form his opinion, nor could he. There is no science or medical

training that allows us to reach into the mind of another and determine their motivations. Even if

we could, Dr. McDonald has not articulated that process.

19

More importantly, Dr. McDonald cannot present an opinion about whether Dr. Kumar "did or did not have a mental state" if it is an "element of the crime charged." Fed. R. Evid. 704(b). In a case involving health care fraud, the Government must prove Dr. Kumar acted "knowingly and willfully" in executing (or attempting to execute) a scheme to defraud any health care benefit program." 18 U.S.C. 1347; see also, 6th Cir. Jury Instruction 10.05. For Dr. McDonald, as a designated expert, to testify that Dr. Kumar was "motivated by the compensation provided," it borders too closely to informing the jury that Dr. Kumar had the requisite knowledge under the health care fraud statute. However, "[t]hose matters are for the trier of fact alone." Fed. R. Evid. 704(b). Therefore, Dr. McDonald's opinion regarding Dr. Kumar's motivations should be excluded pursuant to Federal Rules 702 and 704(b).

## CONCLUSION

Dr. Kumar respectfully requests that the Court grant this Motion in *Limine* and exclude under Federal Rules of Evidence 401, 402, 403, 404(b), 701, 702, 703, and 704(b) any non-noticed expert opinions, improper lay opinions, and/or improper noticed expert opinions.

Dr. Kumar submits that the Government has no proper purpose for the introduction of such evidence, but even if that were not the case, the evidence's probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time.

Respectfully submitted,

s/ *Maritsa A. Flaherty*
Maritsa A. Flaherty (*pro hac vice*) (Cal. Bar No. 327638)
CHAPMAN LAW GROUP
1441 W. Long Lake Rd., Suite 310
Troy, Michigan 48098
(248) 644-6323

mflaherty@chapmanlawgroup.com

Lawrence J. Laurenzi (TN BPR No. 9529)
Elena R. Mosby (TN BPR No. 40562)
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 38103
901-524-5000
llaurenzi@bpjlaw.com
emosby@bpjlaw.com


Ronald Chapman, II (*pro hac*) (Mich. Bar
No. P73179)
THE CHAPMAN FIRM
1300 Broadway
Detroit, MI 48226
Phone: (346) Chapman
Ron@chapmanandassociates.com

*Attorneys for Dr. Sanjeev Kumar*

## <u>NOTICE OF CONSULTATION</u>

Counsel for Dr. Kumar, Elena R. Mosby, consulted with counsel for the Government, Lynn Crum, on October 27, 2025, via e-mail about the instant motion. Counsel for Dr. Kumar, Maritsa A. Flaherty was included on the communications and is aware of Ms. Crum's response. The Government opposes the motion and thus the Parties are unable to reach an accord as to all issues.

*/s/ Maritsa A. Flaherty*